IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

CHRISTOPHER WILCOX,

       **Plaintiff,**

v.

AETNA LIFE INSURANCE COMPANY,

       **Defendant.**

Case No. 18-cv-00463
Honorable Judge William C. Griesbach

## AETNA LIFE INSURANCE COMPANY'S REPLY IN FURTHER SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT

Defendant Aetna Life Insurance Company ("Aetna"), by and through its attorneys, Elizabeth G. Doolin and Chittenden, Murday & Novotny LLC, states as follows for its Reply in Further Support of its Cross-Motion for Summary Judgment:

Plaintiff's Brief for Reply in Support of his Motion for Summary Judgment, and as Response to Aetna's Cross Motion for Summary Judgment (hereafter, "Plaintiff's Reply") mischaracterizes the undisputed facts in the Administrative Record and improperly attempts to supplement those facts with allegations not supported by any record evidence, despite acknowledging that it is now too late to do so. To be clear, there is no dispute between the parties regarding the material facts as set forth in the Administrative Record. The parties' dispute is only in regards to the interpretation and weight to be accorded those facts, and how those facts should be characterized in the parties' respective proposed findings of fact. However, Aetna does dispute the materiality and reliability of Plaintiff's new and unsupported allegations raised for the first

1

Case 1:18-cv-00463-WCG   Filed 05/24/19   Page 1 of 6   Document 34

time in Plaintiff's Reply/Response brief, which are not part of the Administrative Record and should not be considered by this Court on summary judgment.[1]

For example, Plaintiff cites a recent Washington Post article reporting on a letter sent to the CDC by a group of health-care providers. (Plaintiff's Reply at 8-9). Plaintiff states:

> Our society is just becoming more aware of problems with prescribing opioids at the levels such as Mr. Wilcox was receiving and changes are being made about recommended doses and how to monitor patients for compliance with the medications. It is possible that a person can become addicted to narcotics when they are legally prescribed and they are taking them as prescribed. The CDC has issued recommendations which is [sic] subject to some controversy. Guidelines were issued because of the negative functional effects of narcotics medication has [sic] at high doses.

(Plaintiff's Reply at 8-9, internal citations omitted). It is not clear from the above passage whether Plaintiff is arguing that he should be prescribed more opioids or less, but nothing in Plaintiff's argument or the non-record sources he cites are relevant to Aetna's determination that the actual record in this case contains "a lack of clinical evidence to support a cognitive impairment secondary to medication side effects that would prevent Mr. Wilcox from performing his activities of daily living." (DPF ¶ 52, *see also* AR 2213, referenced in DPF ¶ 62).

Other examples of unsupported arguments include Plaintiff's assertion that the company he ran (as disclosed by Plaintiff in his own work history, see DPF ¶ 15) was "obvious [sic] a side business," and Plaintiff's argument that he has a "loss of function" due to carpal and cubital tunnel to such an extent that Aetna's conclusion that Plaintiff could perform sedentary jobs requiring the "ability to grasp" was somehow inappropriate. (Plaintiff's Reply at 10-12). There is no support in the record for either argument.

---

[1] The Seventh Circuit has affirmed denial of a plaintiff's motion to supplement the administrative record where the standard of review was arbitrary and capricious, as it is in this case. *See, e.g., Dragus v. Reliance Standard Life Ins. Co.,* 882 F.3d 667, 674 (7th Cir. 2018). Plaintiff here has not even moved to supplement the record, instead raising new allegations without record support in his summary judgment brief. This is not proper under the Federal Rules of Civil Procedure or the Local Rules of this Court, which require all factual allegations raised on summary judgment to be supported by citation to record evidence. Fed. R. Civ. P. 56(c)(1)(A); Civil L.R. 56(b).

Plaintiff also mischaracterizes the contents of the Administrative Record. For example, Plaintiff alleges that "when record closed for Mr. Wilcox, there was no definitive diagnosis but a seizure disorder had not been ruled out."[2] (Plaintiff's Reply at 5). Plaintiff then goes on to make the unsupported and vague statement that "while Mr. Wilcox recognizes he cannot supplement administrative record at this time, he has been diagnosed with temporal lobe epilepsy. It is not fair for Aetna to discount the symptoms due to no definitive diagnosis." (Plaintiff's Reply at 6). Plaintiff thus implies that Aetna did not take into account Plaintiff's alleged disorder due to the timing of his allegedly "definitive diagnosis."

This argument is contrary to the record evidence, including a peer-to-peer consult between Dr. Hill and Dr. Ellias on January 31, 2017, during which Dr. Ellias communicated that Plaintiff suffered from a "seizure disorder." (DPF ¶ 45). Dr. Hill incorporated this information into her findings of Plaintiff's functional impairments due to his medical conditions as stated in her report dated February 1, 2017.[3] (DPF ¶ 48). Therefore Aetna's final determination of March 31, 2017 *did* take into consideration potential functional impairments due to Plaintiff's alleged seizure disorder. Whether or not Plaintiff has subsequently received a specific diagnosis of "temporal lobe epilepsy"—an assertion which is unsupported by any record evidence—is thus immaterial to the issue of whether or not Aetna's determination on the record was arbitrary and capricious.

Finally, in an attempt to bolster his argument, Plaintiff revisits portions of his claim history that are not at issue in the present case. A significant portion of the new alleged facts Plaintiff presents in his "Second Findings of Fact" (Doc. No. 28) concern Aetna's initial denial on

---

[2] In support of this statement, Plaintiff cites "DFF 40 Response," although none of the various proposed fact filings in this case include anything about a seizure disorder at paragraph 40.

[3] Note, however, that Plaintiff's medical records are not consistent on this point where other records indicate that objective test results from October/November 2016 showed no signs of seizures and Plaintiff and his immediate family denied that he had any history of seizures at that time. (DPF ¶ 41).

3

Plaintiff also mischaracterizes the contents of the Administrative Record. For example, Plaintiff alleges that "when record closed for Mr. Wilcox, there was no definitive diagnosis but a seizure disorder had not been ruled out."[2] (Plaintiff's Reply at 5). Plaintiff then goes on to make the unsupported and vague statement that "while Mr. Wilcox recognizes he cannot supplement administrative record at this time, he has been diagnosed with temporal lobe epilepsy. It is not fair for Aetna to discount the symptoms due to no definitive diagnosis." (Plaintiff's Reply at 6). Plaintiff thus implies that Aetna did not take into account Plaintiff's alleged disorder due to the timing of his allegedly "definitive diagnosis."

This argument is contrary to the record evidence, including a peer-to-peer consult between Dr. Hill and Dr. Ellias on January 31, 2017, during which Dr. Ellias communicated that Plaintiff suffered from a "seizure disorder." (DPF ¶ 45). Dr. Hill incorporated this information into her findings of Plaintiff's functional impairments due to his medical conditions as stated in her report dated February 1, 2017.[3] (DPF ¶ 48). Therefore Aetna's final determination of March 31, 2017 *did* take into consideration potential functional impairments due to Plaintiff's alleged seizure disorder. Whether or not Plaintiff has subsequently received a specific diagnosis of "temporal lobe epilepsy"—an assertion which is unsupported by any record evidence—is thus immaterial to the issue of whether or not Aetna's determination on the record was arbitrary and capricious.

Finally, in an attempt to bolster his argument, Plaintiff revisits portions of his claim history that are not at issue in the present case. A significant portion of the new alleged facts Plaintiff presents in his "Second Findings of Fact" (Doc. No. 28) concern Aetna's initial denial on

---

[2] In support of this statement, Plaintiff cites "DFF 40 Response," although none of the various proposed fact filings in this case include anything about a seizure disorder at paragraph 40.

[3] Note, however, that Plaintiff's medical records are not consistent on this point where other records indicate that objective test results from October/November 2016 showed no signs of seizures and Plaintiff and his immediate family denied that he had any history of seizures at that time. (DPF ¶ 41).

Plaintiff's benefits for the period of September 27, 2014 through September 26, 2016, which is not at issue in this case. (Plaintiff's Reply at 3 [arguing that Aetna's "initial denial in 2015 was arbitrary and capricious"]; Plaintiff's 2d Findings of Fact at ¶¶ 78-86 [discussing Aetna's rationale for its March 24, 2015 decision]). This initial decision, regarding whether Plaintiff was disabled from his "own occupation," was reversed as to the "own occupation" benefit period by Aetna on appeal, and Aetna has already paid Plaintiff benefits for the full "own occupation" period of disability through September 26, 2016. (DPF ¶ 62). Plaintiff's present claim, as set forth in the Complaint, is thus limited to LTD benefits from September 27, 2016 forward, during which period Plaintiff must be disabled from "any reasonable occupation" to receive benefits, subject to the terms and conditions of the Policy. (Compl. ¶¶ 1-2, 47; DPF ¶ 8). Plaintiff's alleged facts and arguments regarding the period for which he has already received benefits are thus not material to the issues in this case.

Aetna hereby incorporates as if fully set forth herein all of the arguments and authorities from Aetna's Memorandum of Law in Response to Plaintiff's Motion for Summary Judgment and in Support of Defendant's Cross-Motion for Summary Judgment. For all of these reasons, Aetna respectfully asks that the Court deny Plaintiff's Motion for Summary Judgment, grant Aetna's Cross-Motion, and enter summary judgment in favor of Aetna on all counts of Plaintiff's Complaint.

Dated: **May 24, 2019.**

        Respectfully submitted,

        AETNA LIFE INSURANCE COMPANY

        By: s/ Elizabeth G. Doolin
           One of Their Attorneys

Elizabeth G. Doolin
C<small>HITTENDEN</small>, M<small>URDAY</small> & N<small>OVOTNY</small> LLC
303 W. Madison Street, Suite 1400
Chicago, IL 60606
(312) 281-3600 (tel)
(312) 281-3678 (fax)
edoolin@cmn-law.com

# CERTIFICATE OF SERVICE

I hereby certify that on **May 24, 2019**, I electronically filed the foregoing **Aetna Life Insurance Company's Reply in Further Support of its Cross-Motion for Summary** with the Clerk of the United States District Court for the Eastern District of Wisconsin, using the CM/ECF system which sent notification of such filing to the following registered CM/ECF participants:

    Mary C. Flanner
    Nola J. Hitchcock Cross
    845 North 11th St.
    Milwaukee, Wisconsin 53233
    mflanner@crosslawfirm.com
    njhcross@crosslawfirm.com

    /s/ Elizabeth G. Doolin
    Elizabeth G. Doolin